UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PHILLIP PHILLIPS

VERSUS

JAVELER MARINE SERVICES, LLC
AND EXXON MOBIL CORPORATION

CIVIL ACTION

22-907-SDD-EWD

**RULING**

Before the Court is the *Motion for Summary Judgment*[1] filed by Defendant, Javeler Marine Services, LLC ("Javeler Marine" or "Defendant"). Plaintiff, Phillip Phillips ("Phillips" or "Plaintiff"), filed an *Opposition*,[2] to which Javeler Marine filed a *Reply*.[3] For the reasons that follow, the motion will be denied.

**I. BACKGROUND**

This case arises from injuries Plaintiff allegedly sustained while working on a dredging project on the Mississippi River (the "Dredging Project").[4] Plaintiff filed a negligence lawsuit against his employer, Javeler Marine, and the owner of the dock on which the Plaintiff was allegedly injured, Exxon Mobil Corporation.[5] According to the Complaint, Plaintiff's cause of action arises pursuant to general maritime law (28 U.S.C.

---

[1] Rec. Doc. 30. Plaintiff argues that Defendant's motion is untimely under the *Scheduling Order* (Rec. Doc. 28), which provided a deadline for filing dispositive motions of October 28, 2023. The Court has confirmed that, as argued by Defendant, this date was a misprint; dispositive motions are to be filed in this case by a deadline of October 28, 2024. This correction is reflected in the Court's *Amended Scheduling Order* (Rec. Doc. 43).
[2] Rec. Doc. 38.
[3] Rec. Doc. 42.
[4] Rec. Doc. 1.
[5] *Id.*

§ 1333 et seq.), the Admiralty Extension Act (46 U.S.C. § 740), and the Jones Act (46 U.S.C. § 30104).

Javeler Marine filed the instant motion asserting that Plaintiff was not a seaman under the Jones Act at the time of the alleged injury.[6] In short, Javeler Marine argues that Plaintiff was primarily hired to work as a mechanic at its landlocked shop located in Broussard, Louisiana.[7] Javeler Marine says that Plaintiff was only sent to field projects such as the Dredging Project "when absolutely needed," and Plaintiff's assignment to such projects was "random and sporadic."[8] Plaintiff opposes the motion, contending that his role at Javeler Marine qualified him as a Jones Act seaman at the time of the incident.[9]

In late 2018, Javeler Marine notified Plaintiff of its intention to hire a mechanic.[10] "Two weeks later, Phillips applied for a job with Javeler [Marine] as a mechanic and began working at a shop owned by Javeler [Marine] in Broussard, Louisiana."[11] Pertinent to the instant motion, Javeler Marine's Dredging Project involved dredging operations in the area between an Exxon Mobil dock and the shore of the Mississippi River.[12] Plaintiff was assigned to work on the Dredging Project for Javeler Marine at the Exxon Mobil facility in Baton Rouge, Louisiana, beginning on either October 28 or October 29, 2019, until the date of the alleged injury on December 8, 2021.[13]

---

[6] Rec. Doc. 30.
[7] Rec. Doc. 30-1, p. 8.
[8] *Id.*
[9] Rec. Doc. 38, p. 1.
[10] Rec. Doc. 30-2, ¶ 1.
[11] *Id.* at ¶ 2. In its Reply brief, Defendant attempts to argue that this statement of fact "only acknowledges that Plaintiff was contacted by [Javeler Marine] at the end of 2018, not that he began working for Javeler [Marine] at the end of 2018." (Rec. Doc. 42, p. 1–2). The Court rejects this interpretation. Not only is it a strained reading of the relatively clear working of its own statement of fact, but it is also directly contradicted by Plaintiff's deposition testimony which Defendant cites in support of the statement ("Q: After you applied for the job, when did you begin working for Javeler [Marine]? A: Two weeks after applying." (Rec. Doc. 38-4, p. 2)).
[12] Rec. Doc. 38, p. 2.
[13] Rec. Doc. 30-2, ¶¶ 4, 5.

According to Plaintiff, at the time of the incident, Plaintiff was walking on the Exxon Mobil dock and was in the process of moving a dredge discharge pipe which was attached on the other end to a Javeler Marine crew boat.[14] At the same time, Plaintiff's co-worker was using the crew boat to assist in moving the pipe to the desired location under the dock.[15] Allegedly, while Plaintiff was pulling on a rope tied to the pipe, the grading of the dock broke below his left foot, causing him to fall and injure himself.[16]

The parties' dispute centers around the details of Plaintiff's role as a Javeler Marine employee and whether Plaintiff's work was that of a seamen as understood under the Jones Act and interpreting jurisprudence.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[17] This determination is made "in the light most favorable to the opposing party."[18] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[19] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue

---

[14] Rec. Doc. 1.
[15] Rec. Doc. 38, p. 2.
[16] *Id.*
[17] FED. R. CIV. P. 56(a).
[18] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[19] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 333–34 (1986)).

for trial."[20] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[21]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[22] All reasonable factual inferences are drawn in favor of the nonmoving party.[23] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[24] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment."[25]

With respect to this particular motion for summary judgment, "[t]he determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury."[26] A motion such as Javeler Marine's may be granted "[w]here the only rational inference to be drawn from the evidence is that the worker is not a seaman."[27] Accordingly, "summary judgment on seaman status in Jones Act cases is rarely proper."[28]

---

[20] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).
[21] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).
[22] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).
[23] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[24] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998)).
[25] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).
[26] *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003).
[27] *Beard v. Shell Oil Co.*, 606 F.2d 515, 517 (5th Cir. 1979).
[28] *Starks v. Advantage Staffing, LLC*, 202 F. Supp. 3d 607, 611 (E.D. La. 2016) (citing *Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir. 1983)).

### B. Seaman Status

The Jones Act permits a "seaman injured in the course of employment ... to bring a civil action at law, with the right of trial by jury, against the employer."[29] In order to recover under the Jones Act, a plaintiff must establish seaman status.[30] The Jones Act does not define the term "seaman." The Supreme Court has established a two-pronged test to determine if a worker is a seaman entitled to the protections of the statute. "First, 'an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.' Second, 'a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.'"[31] In applying this test, all relevant circumstances of the employee's situation must be considered.[32]

#### i. Vessel or Identifiable Fleet of Vessels

At the outset, the presence of a "vessel in navigation"[33] is central to both prongs of the *Chandris* test. Where a worker performs duties on multiple vessels, the vessels must form an "identifiable fleet."[34] The Supreme Court defines an identifiable fleet as a group of vessels with the "requisite degree of common ownership or control."[35]

During the Dredging Project in this case, Plaintiff worked aboard three watercraft owned by Javeler Marine, including one twenty-one foot crew boat powered by an

---

[29] 46 U.S.C. § 30104.
[30] *Becker*, 335 F.3d at 390 n.8.
[31] *Becker*, 335 F.3d at 387 (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995)).
[32] *Chandris*, 515 U.S. at 369.
[33] A "vessel" is understood generally to be "any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 497 (2005). The requirement that the vessel be "in navigation" has not been interpreted to require "a structure's locomotion at any given moment" but rather, to mean "that structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time." *Id.* at 496.
[34] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 556 (1997) (quoting *Chandris*, 515 U.S. at 366).
[35] *Id.* at 560.

outboard engine and two barges outfitted with a variety of equipment needed to complete the project.[36] With no contrary argument from Javeler Marine, the Court finds for the purposes of this summary judgment that the crew boat and two barges used on the Dredging Project were an identifiable fleet of vessels.

### ii. Contribution to the Function or Mission of the Vessel

The first prong of the *Chandris* test provides that the worker's "duties must contribute to the function of the vessel or to the accomplishment of its mission."[37] Meeting this requirement "is relatively easy: the claimant need only show that he 'do[es] the ship's work.' This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.'"[38] A worker does not need to aid in the navigation of the vessel in order to be a seaman.[39]

Plaintiff satisfies this requirement. It is undisputed that all Javeler Marine personnel assigned to the Dredging Project, including Plaintiff, "operated the crew boat, operated the equipment on the dredge barges, and made necessary repairs on the dredge barges, the diesel engine, the crew boat, and moved the dredge discharge pipes."[40] Javeler Marine does not make any argument specifically in reference to this part of the test, and expressly agrees that, "[p]er James Robin and Neils Doran, a Javeler [Marine] supervisor and Javeler [Marine] mechanic respectively, Mr. Phillips contributed to the mission of the Javeler [Marine] Vessels."[41] Accordingly, the Court finds that Plaintiff's work contributed to the function of the vessels in furtherance of the Dredging Project and contributed to the

---

[36] Rec. Doc. 39, ¶¶ 5, 6, 9, 14.
[37] *Chandris*, 515 U.S. at 368 (cleaned up) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)).
[38] *Becker*, 335 F.3d at 387–88 (quoting *Chandris*, 515 U.S. at 368).
[39] *Wilander*, 498 U.S. at 343, 355 (1991).
[40] Rec. Doc. 39, ¶ 9.
[41] *Id.* at ¶ 25.

accomplishment of the dredging mission at hand.

### iii. Substantiality of Connection to the Vessels

The second prong of the *Chandris* test requires that a seaman's connection to a vessel or identifiable group of vessels be "substantial in terms of both duration and nature."[42] The *Chandris* Court instructed: "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time."[43]

### a. Substantiality in Duration

On the durational aspect of the second prong, the Fifth Circuit explains that "[w]here the worker divides his time between vessel and land, an employee can only establish the requisite connection to a vessel—and thus qualify as a seaman—if he spends a substantial portion of his time in service of the vessel."[44] To measure the substantiality of the worker's vessel-based work, the Court in *Chandris* adopted the Fifth Circuit's 30% rule of thumb: Where a worker divides his time between land-based and vessel-related service, "[a] worker who spends less than 30% of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[45] The *Chandris* Court also made clear that this is not a "snapshot" test; in other words, "a worker may not oscillate back and forth between Jones Act coverage and other remedies

---

[42] *Chandris*, 515 U.S. at 368.
[43] *Id.* at 370.
[44] *Grab v. Boh Bros. Const. Co.*, 506 F. App'x 271, 277 (5th Cir. 2013).
[45] *Chandris*, 515 U.S. at 371. The Court recognized that this 30% rule of thumb "serves as no more than a guideline ... and departure from it will certainly be justified in appropriate cases."

depending on the activity in which the worker was engaged while injured."[46]

In support of its position on this requirement, Javeler Marine attached to its brief a document ("the timesheet")[47] purportedly reflecting the division of Plaintiff's hours of work between sea-based and non-sea-based tasks. Javeler Marine argues this document establishes that Plaintiff spent approximately 70% of his time working at the landlocked shop in Broussard, Louisiana, and less than one fourth of his time working on navigable bodies of water.[48] Plaintiff objects to the timesheet as improper summary judgment evidence for two reasons: 1) it was not produced during discovery in response to a pertinent Request for Production; and 2) it was not accompanied by an affidavit attesting to its authenticity.[49]

In connection with the first objection, Plaintiff attached its Requests for Production of Documents that it propounded on Javeler Marine.[50] Request for Production No. 12 requested that Javeler Marine produce, among other things, a copy of any "time sheets" reflecting work performed by Javeler Marine on the Dredging Project taking place in December of 2021.[51] Javeler Marine did not produce any documents in response, and it stated that the response would be supplemented upon its receipt of additional information.[52] Plaintiff complains that the response was never supplemented, and "[t]he *first time* these timesheets were ever produced by Javaler was by attaching them as an exhibit to its dispositive motion."[53]

---

[46] *Id.* at 363 (citing *Reeves v. Mobile Dredging & Pumping Co.,* 26 F.3d 1247, 1256 (3d Cir. 1994)).
[47] Rec. Doc. 34-3.
[48] Rec. Doc. 30-1, pp. 8–9.
[49] Rec. Doc. 38, p. 8.
[50] Rec. Doc.37-4.
[51] *Id.* at 5.
[52] *Id.*
[53] Rec. Doc. 38, p. 8 (emphasis in original).

Federal Rule of Civil Procedure 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." And Rule 26(e) instructs that a party who has responded to a request for production must supplement its response in a timely manner if the party learns that the response is incomplete and if the additional information has not otherwise been made known to the other party.[54] Javeler Marine does not contend that it produced the timesheet to Plaintiff prior to attaching it to its summary judgment motion. In the absence of any explanation from Javeler Marine, the Court finds that the failure to produce the timesheet was not substantially justified. The Court also finds that it was not harmless because, as Plaintiff argues, he had no opportunity to review this pertinent document prior to Javeler Marine's filing of this motion. Accordingly, the timesheet is properly excluded on this ground.[55]

Regarding Plaintiff's second ground for objecting to the timesheet, Federal Rule of Civil Procedure 56 provides that a party must support an assertion of fact on summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."[56] "Although the substance or content of the evidence

---

[54] Fed. R. Civ. P. 26(e)(1)(A).
[55] *See, e.g.*, *James v. Haven Homes Se., Inc.*, No. 08-770, 2011 WL 777971, at *3 (M.D. La. Feb. 28, 2011) (citing Fed. R. Civ. P. 37(c) in determining that certain exhibits are inadmissible as Plaintiff cannot establish that they were produced); *see also Brown v. AT&T*, 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017) (holding that Plaintiff was required to disclose emails used to support his claims during discovery pursuant to Rule 26(a) and thus, under Rule 37(c)(1), was prohibited from using the emails to support his summary judgment as he provided no substantial justification not disclosing the emails).
[56] Fed. R. Civ. P. 56(c)(1)(A).

submitted to support or dispute a fact on summary judgment must be admissible ..., the material may be presented in a form that would not, in itself, be admissible at trial."[57] If the material is inadmissible in its current form, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."[58] Here, Javeler Marine failed to explain the anticipated admissible form of its unauthenticated document. Accordingly, the timesheet is also properly excluded on this ground. Therefore, the timesheet shall not be considered by the Court as summary judgment evidence.[59]

Alternatively, even if the Court were to consider the timesheet, it would not be sufficient to warrant summary judgment in favor of Javeler Marine. As Plaintiff points out, the earliest date recorded on the timesheet is August 2, 2019. It is undisputed that Plaintiff began working for Javeler Marine around the end of 2018.[60] Thus, the timesheet excludes several months of Plaintiff's work with Javeler Marine; in the presence of Plaintiff's countervailing assertions of fact discussed below, the timesheet would not establish Javeler Marine's entitlement to summary judgment on this requirement.

As Javeler Marine points out, Plaintiff testified that about 50% of his time working for Javeler Marine was spent at the shop in Broussard, Louisiana.[61] However, Javeler Marine does not articulate how the other 50% of Plaintiff's work time was spent. On this point, Plaintiff stated in his affidavit that he believes that about 50% of his time at Javeler

---

[57] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 Moore's Federal Practice–Civil ¶ 56.91 (2017)).
[58] *Id.* (quoting advisory committee's note to 2010 amendment of Fed. R. Civ. P. 56).
[59] This evidentiary ruling is without prejudice to Defendant's right to attempt to authenticate and offer the timesheet at trial.
[60] Rec. Doc. 30-2, ¶ 2.
[61] Rec. Doc. 30-1, p. 7.

Marine was spent performing dredging work.[62] Plaintiff also testified in his deposition that when he was not working in the Broussard shop, he worked in various locations, often on barges and offshore.[63] Further, Javeler Marine concedes several of Plaintiff's statements of fact that are relevant in this regard, including that Plaintiff worked on Javeler Marine-owned vessels during his employment,[64] operated dredging equipment and drove the crew boat on multiple Javeler Marine jobs,[65] and sailed with several tugboats to and from multiple dredging locations.[66] Thus, Javeler Marine has failed to show the absence of issues of fact regarding whether Plaintiff's connection to the group of vessels was substantial in duration.

### b. Substantiality in Nature

Under the second prong of the *Chandris* test, a court must also consider whether the worker's connection to the vessel(s) is substantial in nature.[67] Recently, the Fifth Circuit elaborated upon the "substantial in nature" aspect of the test. In addition to considering the worker's exposure to the "perils of the sea,"[68] the Fifth Circuit in *Sanchez v. Smart Fabricators of Texas, LLC*[69] concluded that the following additional inquiries should be made:

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?

---

[62] Rec. Doc. 39-5, ¶ 9.
[63] Rec. Doc. 38-4, pp. 3–11.
[64] Rec. Doc. 39, ¶¶ 5, 6.
[65] *Id.* at ¶ 18.
[66] *Id.* at ¶ 19.
[67] *Chandris*, 515 U.S. at 368.
[68] *See Id.* ("The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.")
[69] 997 F.3d 564 (5th Cir. 2021).

> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?[70]

### *Allegiance to Vessel*

With respect to the first inquiry, the *Sanchez* court does not define the term "allegiance" and provides little guidance as to how this factor should be applied or measured. In *Sanchez*, the employer and vessel owners were different, making this inquiry more meaningful. By contrast, in the instant case, Javeler Marine is Plaintiff's employer as well as the owner of the vessels involved, making this inquiry less important. As one commentator noted, "[i]n single employer cases, [the allegiance inquiry] is essentially irrelevant."[71] Thus, as Plaintiff argues, he owed allegiance to both the vessels and his employer, Javeler Marine.[72] This part of the *Sanchez* test is satisfied.

### *Sea-Based Work*

Next, the Court considers whether Plaintiff's work was sea-based or involved seagoing activity. In essence, this involves whether the worker's duties "take him to sea."[73] Javeler Marine's brief does not make clear how exactly it addresses this question (or, for that matter, any of the *Sanchez* inquiries); instead, it broadly posits that under *Chandris*, "the total circumstances of an individual's employment must be weighed to determine their status as a seaman."[74] Javeler Marine focuses on the notion that Plaintiff

---

[70] *Id.* at 574.
[71] Thomas C, Galligan, Jr., *The "Nature" of Seaman Status After Sanchez*, 82 La. L. Rev. 1, 37 (2021).
[72] Rec. Doc. 38, p. 12.
[73] *Sanchez*, 997 F.3d at 575 (5th Cir. 2021) (quoting *Harbor Tug*, 520 U.S. at 555).
[74] Rec. Doc. 30-1, p. 7.

was hired on as a mechanic primarily to work on land at the Broussard, Louisiana shop.[75] In support, Javeler Marine attached a document purporting to be Plaintiff's job description.[76] This document indicates Plaintiff applied to work at Javeler Marine as a "mechanic," but also that "[f]ield work is possible to go on jobs and serve as a dredge Tech (on shore / off shore / out of state / out of country)."[77] Without further explanation or detail, Javeler Marine contends that the "field work" as a "dredge tech" as described in that document was only "within the confines of working as a mechanic."[78] Javeler Marine also points to testimony by Plaintiff's supervisor indicating that Plaintiff was only assigned to field projects "when absolutely needed."[79]

Plaintiff, on the other hand, does specifically address the "sea-based work" question from *Sanchez*. However, Plaintiff only employs pre-*Sanchez* reasoning. Plaintiff cites an earlier Fifth Circuit case, *In re Endeavor Marine Inc.*,[80] for the proposition that this test is satisfied by a worker's exposure to the perils of the sea.[81] Plaintiff argues that he was exposed to the perils of the sea by way of his work on the Dredging Project on the Mississippi River.[82] Plaintiff is correct that the word "sea" can include the Mississippi River; the Fifth Circuit has found that exposure to the Mississippi River constituted

---

[75] *Id.*
[76] Rec. Doc. 34-2. The Court notes that, like the timesheet, this document was not authenticated by an affidavit. However, Plaintiff did not object to the document and also cited it in its brief in support of its argument. The Fifth Circuit has explained that "[d]ocuments presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use." *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) (citing authority). Because both parties attempt to use this exhibit to support their arguments, and in the absence of any objection, the Court in its discretion will consider the "job description" document despite its lack of proper authentication.
[77] *Id.*
[78] Rec. Doc. 30-1, p. 7.
[79] *Id.* (citing Rec. Doc. 34-6, p. 4).
[80] 234 F.3d 287 (5th Cir. 2000).
[81] Rec. Doc. 38, p. 12.
[82] *Id.*

exposure to the perils of the sea.[83] Given the undisputed fact that Plaintiff performed a variety of tasks on the Dredging Project on vessels in the Mississippi River,[84] the Court finds that Plaintiff was exposed to the perils of the sea, at least to some degree.

Previously, exposure to the perils of the sea was generally thought to be the principal consideration for the substantiality in nature requirement.[85] But according to the Fifth Circuit in *Sanchez*, "[w]hile this is one of the considerations in the calculus, it is not the sole or even the primary test."[86] As outlined, *Sanchez* laid out three specific additional inquiries to be made, including whether the work was sea-based or involved sea-going activity.

Neither party in this case directly applies the reasoning emanating from *Sanchez* with respect to the sea-based work requirement. The plaintiff in *Sanchez* worked on two jack-up drilling rigs: the WD 350 and the Enterprise 263. For the entire duration of the plaintiff's work, the WFD 350 was "jacked-up so that the deck of the barge was level with Gabby's Dock in Sabine Pass, Texas, and separated from the dock by a gangplank. Sanchez could take two steps on the gangplank, and he was ashore."[87] The plaintiff's work on the WFD 350 was held not to constitute seagoing activity or sea-based work, largely because of its proximity to the dock and the fact that it was jacked up (i.e., not mobile) for the duration of the job.[88]

Based on the Court's review of the record and under the principles derived from

---

[83] *See, e.g., Endeavor Marine*, 234 F.3d at 292 n.3; *see also* Galligan, 82 La. L. Rev. at 30 ("[T]he word 'sea' in these opinions really means 'navigable waters.'").
[84] Rec. Doc. 39, ¶ 18.
[85] *See Endeavor Marine*, 234 F.3d 287, 291; *see also Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 935 (5th Cir. 2014), *overruled by Sanchez*, 997 F.3d 564.
[86] *Sanchez*, 997 F.3d at 573.
[87] *Id.* at 567.
[88] *Id.* at 575.

the *Sanchez* decision, Javeler Marine has not established entitlement to summary judgment in this regard. First, Javeler Marine's places undue focus on the argument that Plaintiff is not a seaman because he was hired as a "mechanic," apparently suggesting his position was primarily land-based.[89] The Supreme Court has indicated that job title does not determine seaman status; rather, "[t]he question is what connection the employee had in actual fact to vessel operations."[90] The fact that Plaintiff was hired as a mechanic does not speak to his actual connection to the vessels involved in the Dredging Project.

Conflating the "substantial in duration" and "substantial in nature" considerations, Javeler Marine also focuses on the idea that, according to Plaintiff's supervisor, Plaintiff was only sent to projects in the field when "absolutely needed."[91] However, this testimony only relates to how regularly Plaintiff worked "in the field," and does not provide any information about whether Plaintiff's work on the Dredging Project was sea-based in nature. Moreover, Plaintiff points to other deposition testimony where the same supervisor explained: "We really don't have assigned shop guys. It's all – anytime you're hired [at Javeler Marine] nine [times] out of ten you're going to be going in the field."[92] This demonstrates one of the issues of fact making summary judgment improper at this point.

Javeler Marine concedes that Plaintiff performed several tasks on and around the Mississippi River while working on the Dredging Project and other field assignments during his employment, including operating the crew boat and dredge barge equipment.[93]

---

[89] Rec. Doc. 30-1, p. 7.
[90] *Harbor Tug*, 520 U.S. at 559.
[91] Rec. Doc. 30-1, p. 7.
[92] Rec. Doc. 38-2, p. 37.
[93] Rec. Doc. 39, ¶¶ 9, 18.

The way Javeler Marine frames its argument offers no explanation of why this should not be considered sea-based work. For example, Javeler Marine states:

> While his job may have required him to work on dredging projects on a random and sporadic basis, his primary job was working as a land-based mechanic in a land-based shop far from any navigable body of water. His work took him on navigable waters only briefly and sporadically. He was assigned to the shop in Broussard and only worked in the field when absolutely needed.[94]

Overall, this argument urges the Court to ignore Plaintiff's work on dredging projects because such work was not Plaintiff's "primary job." This does not establish that the work Plaintiff *did* do on those projects was not sea-based. Accordingly, the Court finds that summary judgment evidence on this requirement is lacking and a genuine issue of fact remains.

### Discrete Task vs. Sailing with the Vessel

The final consideration from *Sanchez* asks whether or not the worker's assignment includes sailing with the vessel(s) from location to location. Plaintiff argues the factor is satisfied because Javeler Marine personnel testified that Plaintiff worked on the same three vessels in multiple locations.[95] Because Javeler Marine does not address the factor, it has not been shown that there is an absence of a genuine issue of fact.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Javeler Marine has failed to meet its summary judgment burden. There are genuine issues of fact regarding whether Plaintiff was a seaman at the time of his alleged injuries. Accordingly, the *Motion for*

---

[94] Rec. Doc. 30-1, p. 8.
[95] Rec. Doc. 38, p. 12.

*Summary Judgment*[96] filed by Defendant Javeler Marine Services, LLC is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this <u>4th</u> day of <u>      June      </u>, 2024.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[96] Rec. Doc. 30.